UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                             Case No. 22-42886

DENISE W. WRIGHT,                                  Chapter 13

              Debtor.                    Judge Thomas J. Tucker

_____/

**OPINION AND ORDER GRANTING THE MOTION BY FIELDSTONE VILLAGE ASSOCIATION TO CONFIRM THE ABSENCE OF THE AUTOMATIC STAY**

**I. Introduction**

This Chapter 13 case is before the Court on the motion entitled "Fieldstone Village Association's Motion to Confirm Absence of Any Automatic Stay as to the Association and the Real Property Located at 1588 Club House Ct., Pontiac, MI 48340" (Docket # 20, the "Motion"). The Debtor objected to the Motion. The Court held telephonic hearings on the Motion on May 26, 2022 and June 30, 2022. Counsel for the movant Fieldstone Village Association ("Fieldstone"), counsel for the Debtor, and counsel for the Chapter 13 Trustee appeared at each of the hearings. At the conclusion of the June 30, 2022 hearing, the Court took the Motion under advisement.

For the reasons stated below, the Court will grant the Motion.

**II. Background and facts**

The material facts are not in dispute. The Debtor, Denise W. Wright (the "Debtor"), filed her Chapter 13 bankruptcy petition on April 11, 2022, commencing this case. At that time, the Debtor's husband, Aaron Wright, was the record owner of the condominium in which he and the Debtor reside. That real property is located at 1588 Club House Ct., Pontiac, MI 48340 (the

"Unit"). Aaron Wright purchased the Unit in August 2015, and he was the only grantee on the deed conveying the Unit.[1] At all relevant times, Aaron Wright has been the only owner of record of the Unit. The Debtor has never been an owner of record.

Aaron Wright failed to pay required monthly assessments to Fieldstone, as required by Michigan law and the governing documents for the Association.[2] Fieldstone obtained a judgment in state court against Aaron Wright, which authorized a foreclosure sale of the Unit.[3] Ultimately, Fieldstone caused the Unit to be sold, to a third party bidder, at a sheriff's foreclosure sale that was held on April 12, 2022. That was the day after the Debtor filed this bankruptcy case.

Neither the Debtor nor her attorney gave Fieldstone any notice of the Debtor's bankruptcy filing until April 13, 2022, the day *after* the foreclosure sale occurred. Soon after learning of this bankruptcy case, on April 25, 2022, Fieldstone filed this Motion. In the Motion, Fieldstone seeks an order determining that the automatic stay under 11 U.S.C. § 362(a), which arose on April 11, 2022 when the Debtor filed her bankruptcy petition, does not apply to the Unit, or to the foreclosure sale held on April 12, 2022, and that the sale did not violate the automatic stay.

In support of the Motion, Fieldstone argues that the automatic stay does not apply because as of the petition date, the Debtor did not have any legal or equitable ownership interest in the Unit. As a result, Fieldstone argues, the property of the bankruptcy estate does not include any interest in the Unit. Rather, Fieldstone argues, the Unit was owned solely by Aaron Wright.

---

[1] A copy of the deed is Exhibit 1 to the Motion (Docket # 20, Ex. 1).

[2] According to the Debtor's Schedule D (Docket # 1), Fieldstone was owed $19,690.40 for "Homeowners Association Dues" as of the petition date.

[3] A copy of the judgment is Exhibit 2 to the Motion (Docket # 20, Ex. 2).

2

The Debtor disputes Fieldstone's arguments, and argues that under Michigan law the Debtor has an equitable interest in the Unit, and has a "possessory interest" in the Unit, which interests are property of the bankruptcy estate. The Debtor argues that the automatic stay applies, and protected the Unit from the foreclosure sale, beginning on the day before the sale occurred.

Shortly after holding the first hearing on the Motion, the Court raised another issue, and entered an order for further briefing by the parties. In the Court's Order entered on May 27, 2022 (the "May 27 Order"),[4] the Court stated, in relevant part:

> The Court now concludes that further proceedings on the Motion are necessary, as provided in this Order. In ruling on the Motion, the Court will consider the following issue, and therefore will give the parties an opportunity to brief the issue. The issue is whether, *even if* the automatic stay applied to the foreclosure sale conducted by Fieldstone on April 12, 2022, as the Debtor contends, the Court should treat the sale as if it did not violate the automatic stay, based on the Sixth Circuit case of *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir. 1993) (the "*Easley* issue"). In that case, the court held as follows:
>
>> In summary, we hold that actions taken in violation of the automatic stay are invalid and voidable and shall be voided absent limited equitable circumstances. We suggest that only **where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense**, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, **will the protections of section 362(a) be unavailable to the debtor**.
>
> 990 F.2d at 911 (emphasis added). The Court raises this issue in light of the following facts, which are undisputed:

---

[4] The May 27 Order was signed and filed on May 26, 2022, but was actually entered the next day, on May 27, 2022.

> A. The Debtor and her bankruptcy attorney knew, before this
> bankruptcy case was filed on April 11, 2022, that Fieldstone's
> foreclosure sale was scheduled for April 12, 2022.
>
> B. The Debtor filed her bankruptcy petition to commence this case
> at 10:38 a.m. on Monday, April 11, 2022, the day before the
> scheduled sale.
>
> C. Yet neither the Debtor nor anyone on behalf of the Debtor,
> including the Debtor's attorney, gave any notice to Fieldstone of
> the filing of this bankruptcy case until April 13, 2022, the day after
> the foreclosure sale occurred.
>
> D. Fieldstone and its attorneys did not know of the Debtor's filing
> of this bankruptcy case until April 13, 2022, the day after the
> foreclosure sale occurred.
>
> The foregoing facts are relevant to the *Easley* issue, and other facts
> may also be relevant to the issue.[5]

The Court reiterates that there is no dispute about any of the above facts cited in the May 27 Order. The Court noted in the May 27 Order that it was not yet ruling on the disputed issue of whether the automatic stay applied.[6] After the parties briefed the *Easley* issue, the Court held the second hearing on the Motion, on June 30, 2022. The Motion is now ready for decision.

## III. Discussion

The Court will grant Fieldstone's Motion, for two independent reasons.

### A. There was no automatic stay violation

First, the Court finds and concludes that when the Debtor filed this bankruptcy case, the Debtor did not own any legal or equitable interest in the Unit that Fieldstone foreclosed on. That

---

[5] Order for Further Proceedings [etc.] (Docket # 28) at 1-2 (emphasis in original) (footnote omitted).

[6] *Id.* at 1 n.1.

is because (1) when the Unit was first acquired in 2015, the Unit was deeded to Aaron Wright only; (2) at all times thereafter, the Unit was titled in Aaron Wright's name only; and (3) because no divorce action was filed by either the Debtor or Aaron Wright, at any time, the Debtor acquired no interest in the Unit as marital property under Michigan law.

These conclusions are directly supported by the reasoning and holdings of the bankruptcy court in *Moyer v. Slotman* (*In re Slotman*), No. 12-80232, 2013 WL 7823003 (Bankr. W.D. Mich. Dec. 5, 2013), cited by Fieldstone. The Court finds *Slotman* persuasive, and agrees with it. In that case, the issue was whether the Chapter 7 debtor, Terri Slotman, had any interest in her husband Richard Slotman's business, when Richard transferred the business to his father, about 10 months before Terri filed her bankruptcy case. The issue mattered because it arose in the Chapter 7 Trustee's action seeking to avoid Richard's transfer of the business, as a fraudulent transfer. Such an action required that there must have been a transfer of the bankruptcy debtor Terri's property.

The Chapter 7 Trustee alleged that the debtor Terri "had an ownership interest in the Business because it was, or eventually would have become, part of her marital estate." 2013 WL 7823003, at *3. The *Slotman* court extensively reviewed Michigan law, and concluded that when the husband Richard transferred the business, the debtor Terri did not own any marital property interest in the business. In reaching that result, the *Slotman* court found that the husband Richard had acquired the business from his father several years before the debtor Terri's bankruptcy filing. The Court held that even though the parties were married at that time, Michigan law allows one spouse to acquire and own property as a sole owner during a marriage. The Court further held that although the husband Richard had filed a divorce proceeding against the debtor

5

Terri about 5 months before Terri's bankruptcy filing, Terri never had a marital property interest in the husband Richard's business. This was so, the court held, because under Michigan law, a marital property interest arises only upon the filing of a divorce action, and the husband Richard had transferred the business away to his father several months before he filed the divorce action. As a result, "the [d]ebtor did not have a marital property interest in the [b]usiness at the time it was transferred." 2013 WL 7823003, at *10.[7]

Based on the reasoning in *Slotman*, the Court finds and concludes that in this case, Aaron Wright owned the Unit exclusively; the Debtor owned no marital property interest, or any other legal or equitable interest, in the Unit.

The Debtor appears to argue that she had an interest in the Unit as of the bankruptcy petition date, as the beneficiary of a constructive trust under Michigan law. The Debtor alleges (without citing any specifics or evidence) that she "contribut[ed] to the monthly mortgage payments through her income, [and] help[ed] pay the monthly utility bills."[8] A similar factual argument was made, to no avail, in the *Slotman* case.[9] There are several flaws in the Debtor's constructive trust argument.

First, a constructive trust is an equitable remedy that is imposed by a court, and it does not exist until a court imposes it. *See generally XL/Datacomp, Inc. v. Wilson* (*In re Omegas*

---

[7] The *Slotman* court then stated that "the Trustee may attempt to prove (although it appears to be a factual stretch) that the [d]ebtor was conveyed a direct interest at the time [the husband Richard's father] transferred the [b]usiness to the [d]ebtor's husband, Richard Slotman." *Id.*

[8] *See* Debtor's Resp. to the Mot. (Docket # 24) at pdf p. 4.

[9] The *Slotman* court noted that in that case, it was undispted that the bankruptcy debtor, Terri Slotman, "made significant contributions toward operation of the [b]usiness" at issue, in numerous ways. *See* 2013 WL 7823003, at *2.

6

*Group, Inc.*), 16 F.3d 1443, 1449 (6th Cir. 1994) ("[A] constructive trust is not really a trust. A constructive trust is legal fiction, a common-law remedy in equity that may only exist by the grace of judicial action."). No court had imposed a constructive trust in the Debtor's favor as of the bankruptcy petition date, or as of the next day, when the foreclosure sale occurred. Imposing a constructive trust on the Unit now would not retroactively give the Debtor an interest in the Unit as of the petition date, or as of the foreclosure sale date, and therefore could not support an argument that the foreclosure sale violated the automatic stay.

Second, the vague allegations by the Debtor are insufficient to support the imposition of a constructive trust. As this Court has held:

> The imposition of a constructive trust "makes the holder of the legal title the trustee for the benefit of another who in good conscience is entitled to the beneficial interest." *Arndt v. Vos*, 268 N.W.2d 693, 695 (Mich. Ct. App. 1978).
>
>> A constructive trust may be imposed where such trust is necessary to do equity or to prevent unjust enrichment. Hence, such a trust may be imposed when property has been obtained through fraud, misrepresentation, concealment, undue influence, duress, taking advantage of one's weakness, or necessities, or any other similar circumstances which render it unconscionable for the holder of the legal title to retain and enjoy the property.
>
> *Kammer Asphalt Paving Co., Inc. v. East China Twp. Schs.,* 504 N.W.2d 635, 641 (Mich. 1993) (citations and quotations marks omitted). The burden of proof is upon the person seeking the imposition of the constructive trust. *Id.*

*Miller v. Short* (*In re Short*), 625 B.R. 678, 685-86 (Bankr. E.D. Mich. 2021).

In this case, the Debtor does not allege that her husband obtained his sole ownership of the Unit "through fraud, misrepresentation, concealment, undue influence, duress, [or] taking

7

advantage of one's weakness." Nor do the facts alleged by the Debtor come close to showing that it would be "unconscionable" for the Debtor's husband, Aaron Wright, to "retain and enjoy" his sole ownership of the Unit.

A third problem with the Debtor's argument is that under Michigan law, a constructive trust may not be imposed where there are any "'intervening rights of bona fide purchasers.'" *See Lim v. Combs* (*In re Combs*), 626 B.R. 300, 310 (Bankr. E.D. Mich. 2021) (citations omitted). Fieldstone may qualify as such a bona fide purchaser, but even if it does not, the third party purchaser at the foreclosure sale likely would qualify as a bona fide purchaser.

For these reasons, the Debtor's constructive trust argument cannot support any finding that Fieldstone's foreclosure sale violated the automatic stay.

The Debtor also argues that she has a "possessory interest" in the Unit, which was protected by the automatic stay before the foreclosure sale occurred, and that therefore, the foreclosure sale violated the automatic stay. There are cases holding that a debtor's possessory interest in real property at the time the debtor files for bankruptcy is protected by the automatic stay. *See, e.g. In re Myers*, No. 21-40016-CRM, 2021 WL 5441751, at *4 (Bankr. W.D. Ky. Nov. 19, 2021) (citing cases). But the Debtor has cited no authority under Michigan law that supports the proposition that she has a possessory interest in the Unit, in circumstances like those present here.

The Debtor's right to possession of the Unit as of the petition date, if any, does not mean that the Debtor had any legal or equitable ownership interest in the Unit; she did not and does not. And if the Debtor had any right to possession of the Unit on the petition date, it was only from the fact that the Debtor was residing at, and therefore had possession of, the Unit with the

8

permission of the owner of the Unit.  Even if such an alleged possessory right existed and was protected by the automatic stay of 11 U.S.C. § 362(a), the foreclosure sale conducted by Fieldstone did not violate that right.  The foreclosure sale did not, in and of itself, deprive the Debtor of any such possessory right.  She still resides in the Unit, with her husband Aaron Wright, and the parties agree that Aaron Wright still has a six-month right to redeem the Unit from the foreclosure sale.  During the running of that redemption period, Aaron Wright and the Debtor will be able to continue to reside in (and in that sense, possess) the Unit.

For all of the foregoing reasons, the foreclosure sale did not violate the automatic stay under § 362(a).

**B.  *Easley v. Pettibone* applies.**

The second reason why the Court will grant Fieldstone's Motion is based on *Easley v. Pettibone*, quoted above.   Based on the facts of this case, including the facts recited in the Court's May 27 Order, and elsewhere in this opinion, the Court finds and concludes that, in the words of *Easley*, "the debtor unreasonably withh[e]ld[] notice of the stay and [Fieldstone] would be prejudiced if the debtor is able to raise the stay as a defense;" and "the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result." *See Easley*, 990 F.2d at 911.  As a result, even if this Court had found that the foreclosure sale violated the automatic stay, the Court would not void the sale, but rather would let the sale stand.

In this case, the Debtor, through her attorney, filed her bankruptcy petition at 10:38 a.m. on Monday, April 11, 2022, the day before the scheduled foreclosure sale.  And the Debtor and her attorney both knew well in advance of the bankruptcy filing that the sale was scheduled for April 12, 2022.  Indeed, it is clear that this is why the Debtor filed this bankruptcy case, and why

9

she filed it when she did. The Debtor and her attorney easily could have notified Fieldstone and its attorney of the bankruptcy filing in plenty of time before the sale occurred. But they did nothing to try to give Fieldstone notice of the bankruptcy filing, until April 13, 2022, the day *after* the sale concluded. And Fieldstone and its attorney, not knowing of the Debtor's bankruptcy filing, went forward with the foreclosure sale as scheduled on April 12, 2022.

The Debtor unreasonably withheld notice of the bankruptcy filing to Fieldstone, and Fieldstone would be prejudiced if the Debtor could then use the automatic stay to avoid the sale after the fact. In going forward with the sale as scheduled, Fieldstone incurred costs and legal fees associated with the sale, and changed its position by enforcing its right to foreclose. And voiding the sale now not only would prejudice Fieldstone, but also would prejudice the third party purchaser at the sale.

For these reasons, the Court would decline to void the foreclosure sale in this case, even if that sale had violated the automatic stay (which, the Court has held, it did not). *Cf. In re Dixon*, 528 B.R. 710, 719-20 (Bankr. E.D. Mich. 2015) (for similar reasons, declining to void a post-petition execution sale of a Chapter 7 debtor's motorcycle, even though the sale violated the automatic stay).

## IV. Conclusion and Order

For the reasons stated above, the Court enters the following Order.

IT IS ORDERED that:

1. The Motion (Docket # 20) is granted.

2. There was no automatic stay under § 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a), in effect as to Fieldstone Village Association ("Fieldstone") that applied to stay Fieldstone's April

12, 2022 foreclosure sale of the real property located at 1588 Club House Ct., Pontiac, MI 48340 (the "Unit").

3. Fieldstone's foreclosure sale of the Unit did not violate any bankruptcy automatic stay.

4. This Court would not void Fieldstone's foreclosure sale of the Unit, even if the Court had found that the sale was a violation of the automatic stay.

5. This Order is effective immediately upon entry, notwithstanding the provisions of Fed. R. Bankr. P. 4001(a)(3), and will remain effective in the event of any conversion of this bankruptcy case to another chapter under Title 11.

**Signed on July 6, 2022**

/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**